IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**COREY R.,**

        **Plaintiff,**

v.                                    Civil Action 2:21-cv-5899
                                      Judge Sarah D. Morrison
                                      Magistrate Judge Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Corey R., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**     **BACKGROUND**

Plaintiff protectively filed his application for SSI on August 15, 2019, alleging disability beginning January 7, 2017, due to Bipolar Disorder, Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit and Hyperactivity Disorder ("ADHD"), anxiety, mania, depression, Obsessive Compulsive Disorder ("OCD"), ankle pain, overactive bladder, and abdominal pain. (Tr. 184–92, 219). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on October 1, 2020. (Tr. 39–70). The ALJ denied benefits in a written decision on October 26, 2020. (Tr. 20–38). That became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 23, 2021 (Doc. 1), and the Commissioner filed the administrative record on February 17, 2022 (Doc. 6). The matter has been briefed and is ripe for consideration. (Docs. 11, 13).

**A. Relevant Statements to the Agency and Hearing Testimony**

The ALJ summarized Plaintiff's hearing testimony as well as his statements to the agency:

\*\*\* [Plaintiff] has alleged an inability to work due to the combined effects of his impairments. He suggested that he has difficulty following instructions. He noted problems interacting with others. He also reported that he had difficulty handling money (Exhibit B6E at 4). He reported difficulty walking, hearing, understanding, remembering, and following instructions. He also reported problems with task completion and concentration (Exhibit B6E at 6). During his hearing, [Plaintiff] reported that he must take breaks while walking. He suggested that he has problems with bladder emptying and frequent urination. He testified that he experiences auditory hallucinations. He also reported substantial anxiety that causes difficulty speaking and handing [sic] exposure to large crowds (Hearing Testimony).

(Tr. 29).

**B. Relevant Medical Evidence**

Relevant here, the ALJ discussed Plaintiff's mental impairments as follows:

[Plaintiff]'s records reveal a history of mental health diagnoses including major depressive disorder with psychotic features, generalized anxiety disorder, post-traumatic stress disorder, attention deficit and hyperactivity disorder, and bipolar disorder (Exhibit B13F at 32). His records noted symptoms including anxiety with fidgeting. He had anger and aggression. He also reported regular disruption of mood and inattention (Exhibit B2F at 30).

\*\*\*
In November 2018, [Plaintiff] had been noted to have "a hard time staying on track" (Exhibit B2F at 17). Examination noted normal appearance. He had average eye contact and activity. He had a euthymic mood and full affective range (Exhibit B2F at 19). Furthermore, he had normal attention and concentration, as well as average intelligence (Exhibit B2F at 20). Examination in early 2019 had noted impaired attention span (Exhibit B2F at 39). On examination in March 2019, he displayed racing thought process and a fast rate of speech. However, he had intact thought content. He denied abnormal or psychotic thoughts. He had appropriate insight and judgment, orientation, and good recent and remote memory. He also had intact immediate recall and adequate concentration (Exhibit B2F at 47). His language was articulate and fluent. He had an intact fund of knowledge. He also displayed an

> appropriate mood and affect (Exhibit B2F at 48). Evaluation in April 2019 noted intact thought process and content. He had an appropriate mood and affect (Exhibit B2F at 61-64).
>
> While he did receive some changes to medication during the period at issue, records suggest that psychological symptoms remained generally stable (Exhibit B2F at 66). Even when noting that [Plaintiff] was agitated in May 2019, examination had continued to note normal thought process and content, appropriate insight and judgment, and appropriate mood and affect (Exhibit B2F at 71-77). Normal mental status examination was also noted in September 2019, strongly indicating that his symptoms were well controlled with his treatment regimen (Exhibit B10F at 58).
>
> [Plaintiff]'s records did reveal a brief period of worsening of his symptoms in May 2020. At that time, he had reported to the emergency department with reported suicidal thoughts (Exhibit B9F at 7). He also reported auditory and visual hallucinations (Exhibit B9F at 7). He exhibited normal mood and affect, but was tachycardic (B9F at 10). Examination at the time noted some cluster B personality traits. He had chronic insomnia complaints (Exhibit B9F at 38). With changes in medication at the time, [Plaintiff] reported improvement in mood (Exhibit B9F at 39). By the time of his discharge a short time later, [Plaintiff] was only mildly anxious with no dysphoria. He had a full range of affective expression (Exhibit B9F at 40).
>
> Additional treatment records throughout 2020 continued to reveal a more stable and less limiting range of conditions than alleged at hearing. He had endorsed improvement in functioning in August 2020. Examination at the time revealed normal appearance, mental status, speech, mood, affect, thought process and content, and good insight and judgment (Exhibit B13F at 8). Similar findings had also been noted in June 2020 (Exhibit B13F at 21). He had normal memory (Exhibit B9F at 54). In September 2020, [Plaintiff] was noted to "consistently" attend and participate in counselling sessions (Exhibit B14F at 1). Furthermore, while a diagnosis of posttraumatic stress disorder was noted in the record, additional notations had indicated that it "does not appear that the [claimant] meets full criteria" for such a diagnosis (Exhibit B2F at 29).
>
> Despite his conditions, [Plaintiff]'s records noted that he was able to engage in a broad range of activities of daily living. He could shop in stores. Records in 2019 indicated that he was seeking employment, strongly indicating that he believed himself capable of a greater range of activities than alleged (Exhibit B6E at 4 and B2F at 95).
> ***

(Tr. 29–30).

### C. Medical Opinions

3

The ALJ discussed the medical source opinions and prior administrative medical finding as follows:

> State Agency medical consultants Drs. Leanne Bertani and Dimitri Teague adopted prior administrative law judge findings pursuant to the Drummond and Dennard standards. This included a limitation to the performance of medium exertional work with no crawling, no climbing of ladders, ropes, or scaffolds, a need to avoid all exposure to hazards, including unprotected heights, dangerous machinery, and commercial driving (Exhibit B4A at 6 and B6A). Their opinions are generally persuasive. [Plaintiff]'s treatment records reveal overall stability in his physical functioning, with few persistent limitations, consistent with the prior administrative law judge findings. Their opinions are supported with reference to the medical evidence of record, including findings regarding intact functioning and abilities.
>
> State Agency medical consultants Drs. Paul Tangeman and Karla Delcour adopted prior administrative law judge findings in regard to [Plaintiff]'s psychological conditions (Exhibit B4A and B6A). They suggested that [Plaintiff] was limited to simple, routine work involving instructions that should be demonstrated. They indicated that he should have no report writing as an essential job function. They suggested that he could not perform any production paced or quota driven work. They also indicated that he could not interact with the general public and would be limited to occasional interaction with coworkers and supervisors. They went on to suggest that could not perform team or tandem work activity and would be limited to a static work environment. Finally, they found that he cannot perform any cashier-type positions and would be off task for 5% of the workday (Exhibit B4A at 7 and B6A). These opinions are not fully persuasive. While [Plaintiff]'s brief period of hospitalization and ongoing treatment with counselling and medication does support a conclusion generally consistent with their findings, the overall stability of his conditions indicates less off-task time than suggested. Their opinions, citing evidence available at the time, are supported by the record. However, subsequent treatment notes demonstrate a greater degree of control over symptoms that is inconsistent with the full range of limitations opined by Drs. Tangeman and Delcour.
>
> Dr. Steven Richards submitted a statement in April 2020 that [Plaintiff] is "unable to work at this time" (Exhibit B12F at 1). Although Steven D. Richards, MD provided a narrative statement on 4/7/2020 regarding [Plaintiff]'s ability to engage in work activity, he did not provide a function-by-function assessment of [Plaintiff]'s work-related limitations. In addition, Dr. Richards addressed as issue that is reserved to the Commissioner. Therefore, it is not necessary to evaluate this evidence for persuasiveness.
>
> Although Farah A. Jama, DO conducted an internal medicine consultative examination of [Plaintiff] in November 2019, she did not render any opinions in terms of work-related limitations. (Ex. B3F). Therefore, it is not necessary to

evaluate this evidence for persuasiveness. However, this evidence has been considered within the context of the medical evidence of record.

(Tr. 31–32).

### D. The ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 15, 2019, the application date. (Tr. 25). The ALJ determined that Plaintiff suffered from the following severe impairments: major depressive disorder with psychotic features, generalized anxiety disorder, post-traumatic stress disorder, attention deficit and hyperactivity disorder, and bipolar disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 27).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he is further restricted as follows:
> - He could never crawl, climb ladders, ropes or scaffolds; and,
> - He must avoid all exposure to hazards including unprotected heights, dangerous machinery, and commercial driving; and,
> - He is limited to performing simple, routine work. Instructions should be demonstrated and report writing should not be an essential function; and,
> - He cannot perform any production pace or quota-driven work; and,
> - He can have no interaction with the general public and occasional interaction with coworkers and supervisors; and,
> - He cannot perform team or tandem work and he is limited to a static work environment.

(Tr. 28).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 29).

The ALJ determined that Plaintiff is unable to perform his past relevant work as a state tested nursing assistant. (Tr. 32). Then, relying upon the vocational expert's testimony, the ALJ

concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy: medium exertional jobs such as a janitor, sorter or laundry worker; and light exertional jobs such as a laundry worker, housekeeper or price marker. (Tr. 32–33). She therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 15, 2019, the date the application was filed (20 CFR 416.920(g))." (Tr. 33).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In his Statement of Errors, Plaintiff contends that the ALJ erred when she determined that Plaintiff did not have any severe physical impairments. (Doc. 11 at 5–8). He further argues that when crafting the RFC, the ALJ disregarded the symptoms of his mental health impairments. (*Id.* at 8–12).

The Commissioner counters that there is no reversible error in the ALJ's finding that Plaintiff's physical impairments were not severe impairments during the relevant period. (Doc. 13 at 4–7). And, says the Commissioner, the ALJ crafted an RFC that took into consideration the record as a whole. (*Id.* at 7–11).

### A. Step 2 Physical Impairment

Plaintiff argues that the ALJ erred when she determined that Plaintiff did not have any severe physical impairments. (Doc. 11 at 5–8).

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. Additionally, to be classified as "medically determinable," an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

The finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a [plaintiff]'s impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not

7

constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

In such a situation, the ultimate inquiry is whether substantial evidence supports the RFC fashioned by the ALJ. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 416.945(a). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at * 1–2 (July 2, 1996). The Circuit has explained that "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

The ALJ discussed Plaintiff's physical impairments as follows:

> … [The ALJ] notes that [Plaintiff]'s records reveal a history of overactive bladder. [Plaintiff] testified that he must use the rest room every ten-to-twenty minutes (Hearing Testimony). In 2018, he had reported bladder retention with testing revealing post-void urinary retention (Exhibit B10F at 8). A cystoscopy was without strictures. He had findings consistent with small capacity bladder and potentially diminished compliance (Exhibit B10F at 15). He had failed multiple medication trials. He did have some improvement with a trial of Botox (Exhibit B10F at 15). [Plaintiff] had continued to allege nocturia, frequency, and urgency (Exhibit B10F at 35). However, a review of his treatment records fails to demonstrate the frequency of symptoms alleged. The undersigned finds that this condition causes no more than minimal restrictions to [Plaintiff]'s ability to perform basic work-related activities.

8

[Plaintiff] reported a history of pain and limitation affecting the wrists, ankles, and back, as well as a history of headaches. He had a history of floating bone in his left ankle. However, this injury has resolved (Exhibit B2F at 107 and B7F at 10). He also had a history of hand injury after hitting a wall. He underwent right hand surgery in March 2020 (Exhibit B13F at 3). [Plaintiff] had a right fifth metacarpal fracture requiring open reduction and internal fixation in March 2020 (Exhibit B8F at 20). He did well into April 2020 (Exhibit B8F at 22). His final pin was removed on April 29, 2020 (Exhibit B8F at 17). By May 2020, he was neurovascularly stable. He had intact sensation and reflexes. He did have some pain, soreness, and stiffness, but had good position of his fracture (Exhibit B8F at 16). Furthermore, records in 2020 noted no focal neurological deficits. Examination of the extremities was normal with a full range of motion. He denied abnormal gait and sensory deficits (Exhibit B10F at 63). He maintained full strength in all muscles (Exhibit B3F at 7-8). He had a stable and normal gait and station along with intact dexterity and grip (Exhibit B3F at 8). Considered as a whole, his ankle, back, wrist, and headache conditions cause no more than minimal restrictions to his ability to perform basic work-related activities (Exhibit B3F).

[Plaintiff]'s records also note a history of esophageal stricture and gastroesophageal reflux disease. He had reported food getting stuck in his throat (Exhibit B9F at 38). Testing in 2019 had noted prominent gastroesophageal reflux into the proximal and mid one-third of the esophagus as well as a mild narrowing of the distal esophagus with mild mucosal irregularity (Exhibit B1F at 14). He had previously undergone a balloon dilation and was requesting referral for gastrointestinal consultation in early 2020 (Exhibit B4F at 1). However, his conditions remained stable and caused no more than minimal restrictions in his ability to perform basic work-related activities (Exhibit B6F at 17).

[Plaintiff]'s records also reveal a history of obesity with a body-mass index around 40 kg/m2 (Exhibit B4F at 2 and B13F at 3). This has remained relatively consistent throughout [Plaintiff]'s treatment record. ***

Here, [Plaintiff]'s records do reveal the presence of a history of hypertension, a common obesity-related condition (Exhibit B13F at 3). However, additional records noted the presence of normal blood pressure levels, even without medication (Exhibit B13F at 5). [Plaintiff] reported engaging in regular exercise. His extremities were normal to inspection. He had normal neurological, chest, and cardiovascular findings on examination (Exhibit B10F at 30 and B3F at 3). His records do not reveal significant obesity or hypertension-related complications.

Accordingly, these conditions do not cause any more than minimal restrictions to his ability to perform basic work-related activities.

The undersigned considered all of [Plaintiff]'s medically determinable impairments, including those that are not severe, when assessing [Plaintiff]'s residual functional capacity.

> In addition, his records had suggested a history of a traumatic brain injury (Exhibit B10F at 28). Similarly, records had noted a history of acute Bell's palsy (Exhibit B13F at 3). However, a review of the treatment record fails to reveal any diagnostic evidence supporting such a medically determined impairment.

(Tr. 25–27).

Here, Plaintiff argues that the ALJ erred by not designating his physical impairments—such as "degenerative disc disease, arthritis, cervical and lumbar strain, traumatic brain injury, history of ankle fracture, skull fracture, left scapula and left clavicle fracture, right hand injury, status post open reduction internal fixation, Bell's palsy, overactive bladder, GERD, dysphagia, history of hiatal hernia, and asthma"—as severe. (Doc. 11 at 5). Plaintiff correctly notes that the ALJ did not explicitly designate any severe physical impairments. (Tr. 25). Yet, the ALJ found that the Plaintiff had multiple severe impairments, including "Major Depressive Disorder with Psychotic Features, Generalized Anxiety Disorder, Post-Traumatic Stress Disorder, Attention Deficit and Hyperactivity Disorder, and Bipolar Disorder." (*Id.*). And, importantly, the ALJ considered Plaintiff's physical impairments and their effect on his ability to work when assessing the medical evidence in the RFC analysis. (Tr. 29 ("During his hearing, the claimant reported that he must take breaks while walking. He suggested that he has problems with bladder emptying and frequent urination.")).

Additionally, the ALJ clearly considered Plaintiff's physical impairments when determining what limitations were appropriate in the RFC. (Tr. 28 (concluding that Plaintiff was physically limited to: never crawling, climbing ladders, ropes, or scaffolds; and avoiding all exposure to hazards including unprotected heights, dangerous machinery, and commercial driving)). Those parts of the RFC were based upon Plaintiff's physical limitations. So, even though the ALJ did not classify any of Plaintiff's physical ailments as severe impairments, she still considered them when assessing his ability to work. In such circumstances, courts have determined that a failure to

categorize a particular impairment as severe or non-severe is harmless. *King v. Comm'r of Soc. Sec.*, No. 2:15-CV-2225, 2016 WL 3437379, at *4 (S.D. Ohio June 22, 2016), *report and recommendation adopted,* No. 2:15-CV-2225, 2016 WL 3689898 (S.D. Ohio July 12, 2016). In fact, the Sixth Circuit has warned against remand when it would be an "'idle and useless formality.'" S*ee, e.g.*, *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (noting that judicial review of agency action should not be a ping-pong game) (quoting *Nat'l Labor Relations Bd. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)); *id.* (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.")). Here, it would be futile because the ALJ already assigned physical limitations to match Plaintiff's alleged physical impairments. So to the extent the ALJ failed to classify Plaintiff's physical impairments as severe, any such error was harmless. Plaintiff has not shown that the ALJ failed to consider the impact of his physical impairments on his ability to work, and thus he has failed to show reversible error.

### B. RFC Determination

Because Plaintiff filed his application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.913(a), 416.920c (2017). A [Plaintiff]'s RFC is an assessment of "the most [a [Plaintiff]] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A [Plaintiff]'s RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from

nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . ." § 416.920c(b)(3).

Here, the ALJ determined that Plaintiff had the RFC to perform medium work. (Tr. 28). Plaintiff argues that the ALJ failed to address fully Plaintiff's mental impairments and related limitations. (Doc. 11 at 9). Namely, Plaintiff criticizes the ALJ for not incorporating the following

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 416.913(a)(2), (5).

12

in her RFC determination: "The State agency psychological consultants clearly opined that [Plaintiff] would have difficulty maintaining attention and concentration; would have difficulty performing at a consistent pace without interruptions; and may require additional time off task…." (*Id.* at 9).

Plaintiff says the ALJ should have adopted the state agency psychological consultants' recommendations in full (*see id.*). Instead, the ALJ found the State agency psychological consultants "not fully persuasive," because later records of Plaintiff's mental health treatment demonstrated a greater degree of control over his symptoms, which is inconsistent with the full range of limitations opined by the State agency psychologists. (Tr. 28). As such, the ALJ explained that she found the State agency psychological consultants' reports well supported by evidence available to them at the time but not entirely consistent with the record as a whole—particularly the new medical evidence that was unavailable to the State agency psychological consultants. The Court finds that the ALJ did not err in choosing not to adopt the exact limitations proposed by the state agency consultants.

The ALJ was under no obligation to adopt the state agency psychologists' opinions in their entirety. *See Ferguson v. Commissioner of Soc. Sec.*, No. 2:18-CV-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019), report and recommendation adopted sub nom. *Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-CV-1024, 2019 WL 3083112 (S.D. Ohio July 15, 2019); *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014) ("[E]ven where an ALJ provides 'great weight' to an opinion, an ALJ is not necessarily required to adopt wholesale limitations contained therein."). The state agency psychologists are non-treating sources, and the ALJ evaluated their opinions accordingly. The ALJ cited the subjective and objective medical evidence upon which she relied in determining the RFC. She explained that the state

13

agency psychological consultants' opinions were incomplete because they did not consider the entirety of the medical evidence available now. This new medical evidence indicated the following:

    a. April 18, 2019: improved thought process and content, insight and judgment, and mood and effect (Tr. 439–41 (notes from Martha McCoy, APRN during medical somatic follow up session);

    b. May 23, 2020: normal memory (Tr. 805 (progress notes by hospitalist Andrew Bryant, DO)); and

    c. August 20, 2020: normal appearance, mental status, speech, and mood (Tr. 933 (primary care progress notes from Steven Richards, MD)).

At base, Plaintiff wishes "the ALJ had interpreted the evidence differently." *Glasgow v. Comm'r of Soc. Sec.*, No. 2:15-CV-1831, 2016 WL 2935666, at *7 (S.D. Ohio May 20, 2016), report and recommendation adopted, No. 2:15-CV-01831, 2016 WL 4486936 (S.D. Ohio Aug. 26, 2016), aff'd, 690 F. App'x 385 (6th Cir. 2017). Particularly, Plaintiff wanted the ALJ to view the more recent evidence of his improving symptoms differently. (Tr. 30, 790–91, 933, 946, 961). But the ALJ did not err, and the law prohibits the Court from reweighing the evidence and substituting its judgment for that of the ALJ. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

### IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  November 2, 2022                              /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE